| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------------X<br>TIMOTHY J. GOLDEN<br><br>                                    Plaintiff,<br><br>                    -against-<br><br>VERIZON NEW YORK, INC.<br><br>                                  Defendant.<br>------------------------------------------------------------------------X | For Online Publication Only<br><br>**FILED**<br>**CLERK**<br>1/23/2026 12:41 pm<br>**U.S. DISTRICT COURT**<br>**EASTERN DISTRICT OF NEW YORK**<br>**LONG ISLAND OFFICE**<br><br>**MEMORANDUM & ORDER**<br>24-CV-6864 (JMA) (LGD) |

**AZRACK, United States District Judge:**

Plaintiff Timothy J. Golden, proceeding pro se, brings breach of contract claims against his former employer, Defendant Verizon New York Inc. ("Verizon"), alleging that Verizon violated its Collective Bargaining Agreement (CBA) with its union, the Communications Workers of America, when Verizon failed to accommodate Golden's disability. (ECF No. 1-2 ("Compl.") ¶¶ 10-12.) Before the Court is Verizon's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF No. 32.) For the reasons set forth below, the motion to dismiss is GRANTED.

## I. BACKGROUND

### A. Facts[1]

Golden worked as a Field Technician for Verizon from January 1990 to January 2018. (Compl. ¶¶ 3, 69.) His job required him to lift and carry a 75-pound ladder daily. (Id. ¶ 3.) On November 2, 2009, he suffered back, neck, and shoulder injuries in a workplace accident after the safety handle attached to his company truck broke, causing him to fall off the truck's elevated platform and into the road. (Id. ¶ 13.) Following the accident, Golden was evaluated by doctors,

---

[1] The following facts are taken from Golden's complaint, which at this stage are assumed to be true. See Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC, 156 F.4th 68, 75 (2d Cir. 2025).

who diagnosed him with herniated and bulging discs, and he engaged with MetLife, the administrator of Verizon's disability plan, regarding his disability claim. (Id. ¶¶ 16-25.) Golden asked MetLife to arrange a return to work with restrictions—specifically, to a role that did not require carrying heavy equipment. (Id. ¶¶ 10, 37.) In May 2011, Verizon informed MetLife that it could not accommodate the restrictions. (Id. ¶ 38.) In March 2014, Golden filed a disability discrimination complaint against Verizon with the Equal Employment Opportunity Commission ("EEOC"), and on May 12, 2014, the EEOC filed the formal charge. (Id. ¶ 44; See ECF No. 34-2 ("Mishra Decl."), Ex. B.) On June 9, 2015, the EEOC issued Plaintiff a right-to-sue letter. (Compl. ¶ 54.)[2]

From 2015 to 2017, Verizon continued to deny Golden's accommodation requests or otherwise return him to work. (Id. ¶ 51-68.) On January 26, 2018, Verizon offered Golden a lump-sum retirement payment, which Golden accepted. (Id. ¶ 69.) One year later, in May 2019, Verizon informed Golden that he did not qualify for Social Security disability benefits because he had not returned to work for 5 of the 10 years before retirement. (Id. ¶ 73.) In response, Golden initiated a grievance with Verizon, again asking for a return to work with accommodation, which Verizon denied. (Id. ¶¶ 74-75). Golden thereafter initiated another discrimination complaint against Verizon with the EEOC, and in 2021, the EEOC filed the formal charge. (Id. ¶ 78; ECF No. 34-2 ("Mishra Decl."), Ex. B.) On April 7, 2022, the EEOC issued Golden a right-to-sue letter concerning his 2021 charge. (Id. ¶ 83.)

---

[2] Under the Americans with Disabilities Act ("ADA"), once an individual receives a "right-to-sue" letter from the EEOC, they have 90 days to bring a claim in federal court. 42 U.S.C. §§ 2000e-5(f)(1), 11217(a); McBride v. N.Y.C. Hum. Res. Admin, No. 07-CV-2624, 2007 WL 2907321, at *1 (E.D.N.Y. Oct. 3, 2007) ("Before filing an ADA claim in federal court, the plaintiff must file a timely charge of discrimination with the EEOC or an equivalent state or city agency and must receive a 'Notice of Right to Sue' letter from the EEOC. . . . Thereafter, the ADA claim must be filed in federal court 'within 90 days of the claimant's receipt of the right-to-sue letter.'").

2

**B.      Procedural History**

On July 5, 2022, Golden filed suit in the Southern District of New York, alleging that Verizon had refused to reasonably accommodate his disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(b)(5)(A). (See ECF No. 34-2 ("Mishra Decl."), Ex. B.)  Golden also asserted a state law failure-to-accommodate claim under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296.3(a). (Id.)

In February 2024, Judge Abrams granted Verizon's motion to dismiss. Golden v. Verizon New York Inc., No. 22-CV-5757, 2024 WL 664781, at *3–4 (E.D.N.Y. Feb 16, 2024).  Judge Abrams found that Golden's ADA claims were time-barred because Golden had failed to file suit within 90 days of the 2015 EEOC right-to-sue letter and had failed to file the 2021 EEOC charge within 300 days of the discriminatory employment practices alleged.  Judge Abrams also declined to exercise supplemental jurisdiction over Golden's state law claims and recommended that Golden discuss his case with the New York Legal Assistance Group ("NYLAG"). Id. at *7.  In July 2024, Judge Abrams directed Golden to submit a letter by August 1, 2024 indicating whether he would seek leave to amend his complaint. (Golden v. Verizon New York Inc., No. 22-CV-5757, ECF No. 62.)  After Golden failed to meet the August 1 deadline, Judge Abrams dismissed his complaint. (Id., ECF No. 63.)  Thereafter, Golden filed an untimely request for leave to amend his complaint. (Id., ECF No. 65.)  In August 2024, Judge Abrams denied the request and closed the case, finding, inter alia, that "any amendment would be futile because his federal claims remain time-barred." (Id., ECF No. 66.)

On September 9, 2024, Golden filed the instant suit in New York State Supreme Court, Nassau County, asserting solely breach of contract claims against Verizon based on its purported

3

violations of the CBA with Golden's union.  (Compl. ¶¶ 9-12.)  On September 27, Verizon removed the case to this Court pursuant to 28 U.S.C. § 1441(a) on the ground that Golden's purported state law breach of contract claims present a federal question under the Labor Management Relations Act, 29 U.S.C. § 185(a). (ECF No. 1.)  On March 14, 2024, Verizon filed a motion to dismiss, asserting that Golden's claims are preempted by the Labor Management Relations Act, time-barred by the statute of limitations, and precluded by the doctrine of res judicata.  (ECF No. 32; see Federal Rule of Civil Procedure 12(b)(6).)

## II.     LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In assessing plausibility, a court "must accept as true all of the allegations contained in a complaint" but must discount "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

Pro se submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997).  The Court is required to read a plaintiff's pro se complaint liberally and interpret it as raising the strongest arguments it suggests. United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (per curiam) (citation omitted); Harris, 572 F.3d at 72.  The Supreme Court has held that pro se

4

complaints need not even plead specific facts, but rather, "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted); see also Fed. R. Civ. Pro. 8(e) ("Pleadings must be construed so as to do justice.").

A court may consider a res judicata defense via a Rule 12(b)(6) motion to dismiss "when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 498 (2d Cir. 2014); see Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes.").

### III. DISCUSSION

Golden alleges that Verizon breached several versions of its CBAs with his union by declining to transfer him to a new position once his disability made him unable to perform his former role. (Compl. ¶¶ 9, 10-12; Id. ¶ 89 (citing provisions of the 2008, 2012, and 2016 CBAs that allegedly obligated Verizon to "transfer[] health impaired employees who cannot, with reasonable accommodation, perform their current jobs, to lateral or downgrade positions.")). Golden's claims must be dismissed as they are preempted by the Labor Management Relations Act ("LMRA") and precluded by res judicata.

### A. Preemption

First, Golden's claims are fully preempted by the LMRA. Section 301 of the LMRA gives federal district courts jurisdiction to decide disputes arising from collective bargaining agreements between unions and employers. See 29 U.S.C. § 185(a) ("Suits for violation of contracts between

an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties[.]"). Section 301 "preempts claims that are 'inextricably intertwined with consideration of the terms of [a] labor contract.'" Wall v. Constr. & Gen. Laborers' Union, Loc. 230, 224 F.3d 168, 178 (2d Cir. 2000) (quoting Allis–Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985)); see Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) (holding that Section 301 preempts claims "founded directly on rights created by" or "substantially dependent on analysis of a collective-bargaining agreement"). In other words, state-law claims are preempted when their resolution "depends upon the meaning of a collective bargaining agreement," but avoid preemption when they "can be resolved without interpreting the agreement itself." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988); see also Whitehurst v. 1199SEIU United Healthcare Workers E., 928 F.3d 201, 207 (2d Cir. 2019) ("That a court may need to consult the CBA in resolving the state law claim—to compute damages, for instance—does not subject that claim to preemption by § 301.").

The Second Circuit has held that a breach of contract claim is preempted by Section 301 when the claim relies on alleged breaches of a collective bargaining agreement. See Lane v. 1199 SEIU Healthcare Workers Lab. Union, 694 F. App'x 819, 821 (2d Cir. 2017) ("[T]he powerful preemptive force of Section 301 displaces all claims substantially dependent on analysis of a collective-bargaining agreement, which would be the case with a breach-of-contract claim[.]" (citation and quotation marks omitted)). As a result, courts in this Circuit routinely hold that claims based on breaches of CBAs are preempted by the LMRA. See e.g. Doyle v. United Airlines, Inc., 914 F. Supp. 2d 325, 337 (E.D.N.Y. 2012) ("Where, as here, a plaintiff has not identified any source of her claimed contract rights other than a collective bargaining agreement, plaintiff's

6

claims must be construed as preempted by LMRA § 301."); Cummings v. City of New York, 302 F. Supp. 3d 511, 529 (S.D.N.Y. 2017); Sullivan v. Gelb, 735 F. Supp. 3d 282, 301 (S.D.N.Y. 2024).

Golden's breach-of-contract claims are expressly based on Verizon's alleged breach of the CBA governing his employment with Verizon. Golden cites provisions of the CBA throughout his complaint and repeatedly asserts that Verizon breached the CBA when it failed to transfer him to a new role. (See Compl. ¶ 89. ("Verizon breached each Collective Bargaining Agreement with me . . . when Verizon failed to fulfill its obligation to transfer me, a health impaired employee . . .")); (See id. ¶¶ 5, 10-12). Deciding if Verizon breached the CBA clearly requires interpreting the CBA, not merely referring to it. See Greco v. Commc'ns Workers of Am., Loc. 1104, 824 F. Supp. 2d 351, 356 (E.D.N.Y. 2011) ("[I]f Plaintiff's claims require interpretation, and not mere reference to the CBA, they are preempted by Section 301."); see also Whitehurst, 928 F.3d at 207.

Because Golden's claims are fully preempted, they must be dismissed.[3] See Allis-Chalmers Corp., 471 U.S. at 220 (1985); Ignacuinos v. Boehringer Ingelheim Pharms. Inc., 8 F.4th 98, 105 (2d Cir. 2021).

**B.** **Res Judicata**

Golden's claims must also be dismissed on res judicata grounds: the facts underlying his claims are identical to those at issue in the prior federal action in the Southern District of New York.

---

[3] Golden does not purport to bring a "hybrid" Section 301 LMRA claim, see Doyle, 914 F. Supp. 2d at 337; DelCostello v. International Broth. of Teamers, 462 U.S. 151, 165 (1983). Nor does he allege any facts suggesting that his union breached its duty of fair representation owed to him, which would be required to allege a "hybrid" Section 301 LMRA claim. Even if he had attempted to plead such a claim, it would be barred by the applicable six-month statute of limitations, see Doyle, 914 F. Supp. 2d at 331, and precluded by res judicata, see infra III.B.

The doctrine of res judicata, or claim preclusion, bars re-litigation of a claim if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Soules v. Conn. Depot Emergency Servs. & Pub. Prot., 882 F.3d 52, 55 (2d Cir. 2018) (quoting Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000)).  All three res judicata factors are present here.

First, the prior action was adjudicated on the merits.  Under Federal Rule of Civil Procedure 41(b), "[u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." Fed. R. Civ. Pro. 41(b). Furthermore, "[t]he longstanding rule in this Circuit . . . is that a dismissal for failure to comply with the statute of limitations will operate as an adjudication on the merits, unless it is specifically stated to be without prejudice." PR Harris, Inc. v. Boeing Co., 700 F.2d 894, 896 (2d Cir. 1983); see also Corley v. Farrell, 833 F. App'x 908, 909 (2d Cir. 2021) (affirming district court's res judicata dismissal of claims that had previously been brought, dismissed as time-barred, and thus deemed adjudicated on the merits).  When Judge Abrams dismissed Golden's federal claims as time-barred and declined to apply either the doctrines of equitable tolling or equitable estoppel, the dismissal did not specifically state that it was without prejudice. Golden, 2024 WL 664781, at *6.  As such, Golden's federal claims were adjudicated on the merits. See Corley, 833 F. App'x at 909; see also Zappin v. Doyle, 756 F. App'x 110, 111 (2d Cir. 2019).

The second factor can be quickly disposed of: the parties named in the previous action are identical to the parties named in the instant suit.  (see Compl.; Mishra Decl., Ex. B.)  As such, the

8

second res judicata factor is met.

As for the third factor, in assessing whether the claims were, or could have been, raised in the previous action, "it must first be determined that the second suit involves the same claim or—nucleus of operative fact—as the first suit." Gutierrez Perez v. Garland, No. 20-CV-2222, 2022 WL 16826725, at *2 (2d Cir. Nov 9, 2022) (quoting Channer v. DHS, 527 F.3d 275, 280 (2d Cir. 2008)). "To determine whether two actions arise from the same transaction or claim, we consider 'whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 499 (2d Cir. 2014) (quoting Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001)). Where "the events constituting the asserted injury are the same in [the instant] case as in its predecessor[]" and "all the facts necessary to support the claims before us now were pleaded, or could have been pleaded, in the first action," res judicata requires dismissal. Vargas v. Cap. One Fin. Advisors, 559 F. App'x 22, 27 (2d Cir. 2014) (quoting In re Teltronics Services, Inc., 762 F.2d 185, 193 (2d Cir. 1985)). Moreover, merely relabeling legal claims under an ostensibly novel cause of action cannot overcome res judicata preclusion. It is the "identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [plaintiff] chose to form her complaint." Woods v. Dunlop Tire Corp., 972 F.2d 36, 39 (2d Cir.1992); see also In re Teltronics Services, Inc., 762 F.2d at 193 ("New legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata.").

In the prior action, Golden asserted that he had been injured on the job, diagnosed with a permanent disability, denied reasonable accommodation by his employer, and induced to retire

9

with the promise of Social Security disability benefits. (Mishra Decl., Ex. B ¶¶ 10, 39, 40, 53.) In the current case, Golden pleads the same facts: the same workplace injury; the same disability diagnosis; the same denial of reasonable accommodation; and the same inducement of retirement (Compl. ¶¶ 13, 21-25, 38, 69.) Although Golden now asserts a new claim—that Verizon, in failing to accommodate his disability restrictions, breached its contractual obligations in the CBAs with the Communications Workers of America—the "nucleus of operative fact" is the same in both actions. (See Compl. ¶¶ 10-12.) Indeed, the underlying facts are not merely "related in time, space, origin, or motivation"; they are identical. See Woods, 972 F.2d at 39; In re Teltronics Services, Inc., 762 F.2d at 193. Golden's instant claims "form a convenient trial unit" with the previously alleged claims and addressing them as a unit would have "conform[ed] to the parties' expectations." Interoceanica, 107 F.3d at 90.

Although Golden contends that he was unaware of Verizon's alleged breaches of contract and "concealment of material facts and false statements" until shortly before Judge Abrams' dismissal order, (ECF No. 36 at 3), the fact remains that both actions hinge on Verizon's failure to accommodate Golden's disability, which has been known to Golden from the inception of his first case, and which was adjudicated on the merits. Golden even admits that that he attempted, after missing Judge Abrams' final deadline, to amend his complaint to include a breach of contract claim. (ECF No. 36 at 5); see Wilson v. City of New York, No. 04-CV-1906, 2005 WL 2387585, at *3 (E.D.N.Y. Sept. 28, 2005) (suggesting that the "very claim that plaintiff attempted to add in her motion to amend" during a previous action would be barred by res judicata in a subsequent proceeding). Furthermore, although Golden asserts that Judge Abrams "closed my case, in error," the docket shows that Judge Abrams granted Golden over five months to seek leave to amend his

complaint as to his federal claims following the first dismissal. Golden, 2024 WL 664781, at *7; Golden v. Verizon New York Inc., No. 22-CV-5757, ECF No. 62 (S.D.N.Y. July 16, 2024) (order directing Plaintiff to submit letter regarding amendment of his complaint). Golden failed to do so. Id.

As explained earlier, Golden's breach of contract claim is preempted and any potential "hybrid" Section 301 LMRA claim premised on the alleged breach of the CBAs would be a federal claim that is barred by res judicata.

**C.     Section 503 Claim**

Construing Golden's opposition papers liberally, see Akinrosotu, 637 F.3d at 167, Golden also appears to claim that Verizon's federal contractor status obliged it under Section 503 of the Rehabilitation Act, 29 U.S.C. § 793(a) ("Section 503"), to "take affirmative action to employ and advance in employment qualified individuals with disabilities" and that Verizon's failure to reassign Golden violated its contractual obligations to the Communications Workers of America, giving rise to a new cause of action. (ECF No. 36 at 3-4.)

To the extent Golden is attempting to raise an independent claim under Section 503, such a claim would fail because there is no private right of action under Section 503. Davis v. United Air Lines Inc., 662 F.2d 120, 127 (2d Cir. 1981) ("[N]o implied private right of action exists under section 503."); see also Burke v. Niagara Mohawk Power Corp., 142 Fed. App'x 527, 528 (2d Cir. 2005) (affirming dismissal on the basis that Section 503 contains no private right of action). Additionally, any federal claim under Section 503 would be barred by res judicata in any event.

Finally, to the extent that Golden relies on Section 503 as part of his claim that Verizon breached contractual obligations to his union under the CBAs, such a claim is, for the reasons

11

stated previously, both preempted and barred by res judicata.

### IV.     CONCLUSION

For the foregoing reasons, Verizon's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED.  This action is dismissed WITH PREJUDICE.  The Clerk of the Court is respectfully directed to enter judgment consistent with this Order and close this case.

**SO ORDERED.**

Dated: January 23, 2026
       Central Islip, New York

                                            /s/ (JMA)
                                    JOAN M. AZRACK
                                    UNITED STATES DISTRICT JUDGE